UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
MYRA Q.F.,

                     Plaintiff,         <u>DECISION AND ORDER</u>
                                        1:20-CV-06183-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In March of 2017, Plaintiff Myra Q.F.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 26).

This case was referred to the undersigned on January 26, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 24,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

30). For the following reasons, Plaintiff's motion is granted, the

Commissioner's motion is denied, and this case is remanded for calculation

of benefits.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on March 9, 2017, alleging disability

beginning January 5, 2017. (T at 52, 141).[2]  Plaintiff's application was

denied initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on January 8, 2019,

before ALJ Miriam Shire. (T at 13). Plaintiff appeared with an attorney and

testified. (T at 18-28). The ALJ also received testimony from Victor Alberigi,

a vocational expert. (T at 31-34).

### B. ALJ's Decision

On April 30, 2019, the ALJ issued a decision denying the application

for benefits. (T at 49-64).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since March 9, 2017 (the alleged onset date). (T

at 54).  The ALJ concluded that Plaintiff's major depressive disorder;

schizoaffective disorder; bipolar disorder; gender dysphoria; and hearing

loss were severe impairments as defined under the Act. (T at 54).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 19.

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 54).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations: she cannot perform any tasks that involve reading, writing, or math; she must have a job in which shift work is available (to avoid travel at peak rush hour); she cannot tolerate more than a moderate noise environment; she cannot perform work that requires use of a telephone; and she is limited to a simple job involving only occasional changes in the workplace and occasional social interaction with co-workers, supervisors, and the public. (T at 55).

The ALJ noted that Plaintiff had no past relevant work. (T at 59).

However, considering Plaintiff's age (26 on the application date), education (limited, but able to communicate in English), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 59).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between March 9, 2017 (the application

date) and April 30, 2019 (the date of the ALJ's decision). (T at 60).  On June 12, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on August 6, 2020. (Docket No. 6).  On September 9, 2021, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 24, 25).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on November 19, 2021. (Docket No. 30, 31).  On December 24, 2021, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 34).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises three (3) main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's step five analysis.  Second, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Third, she contends that the ALJ erred in conducting the step three Listings analysis.  This Court will address each argument in turn.

### A.    Step Five Analysis

At step five of the sequential evaluation, the Commissioner determines (1) whether the claimant can perform substantial gainful activity other than her past relevant work and (2) whether a "significant number of

jobs exist in the national economy" that the claimant can perform. *See* 20 CFR § 404.1560; *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004).   The Commissioner may carry this burden through "the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In the present case, the ALJ found that Plaintiff could perform other substantial gainful activity and that a significant number of jobs exist in the national economy that Plaintiff can perform. (T at 59).  The ALJ referenced three (3) representative occupations identified by the vocational expert as jobs that exist in significant numbers in the national economy that a claimant with Plaintiff's RFC could perform – laundry sorter, laundry worker II, and housekeeper hotel. (T at 59).

Plaintiff argues that the ALJ's analysis was flawed because she failed to reconcile a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT").

The DOT is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs.  The Social Security Administration has taken administrative notice of the DOT. *See* 20 CFR § 416.966 (d)(1).

Social Security Ruling 00-4p provides that when a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …."  SSR 00-4p.  If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault v. SSA*, 683 F.3d 443, 446 (2d Cir. 2012)(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

SSR 004-p further provides that the Commissioner will "rely *primarily* on the DOT … for information about the requirements of work in the national economy." SSR 004-p (emphasis added).  However, neither the DOT nor the vocational expert's testimony "automatically 'trumps' when there is a conflict;" rather, the ALJ "must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the … testimony rather than on the DOT information." *Id*.

The DOT's job descriptions include General Educational Development ("GED") levels rated between 1 and 6 with respect to reasoning, mathematical and language development. *See Appendix C—*

*Components of the Definitional Trailer*. The GED levels "describe the general educational background that makes an individual suitable for a particular job." *Vandermark v. Colvin*, No. 3:13-cv-1467 (GLS/ESH), 2015 WL 1097391, at *9 n.19 (N.D.N.Y. Mar. 11, 2015).

In the present case, all the representative occupations identified by the vocational expert have GED levels of 1, which implies that they require some reading, writing, or math, albeit at a very basic level. (T at 32). Plaintiff argues that this creates a conflict between the vocational expert's testimony and the DOT, which the ALJ did not resolve.

This Court concludes that there is no unresolved conflict between the vocational expert's testimony and the DOT, but there is a conflict between the hypothetical presented to the expert and the RFC determination.  This conflict requires remand.

The ALJ asked the vocational expert about a hypothetical claimant who was, in pertinent part, limited to "a job that does not require *much* reading, or writing, or mathematics…." (T at 31)(emphasis added).  The vocational expert testified that such a person could perform the representative occupations. (T at 31-32)  The vocational expert specifically discussed the issue of GED levels, noting that all three occupations had GED levels of 1 and explaining that the rating "doesn't go any lower than

1." (T at 32).  The vocational expert stated that her testimony conformed to the DOT and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). (T at 34).

Although the ALJ (and/or Plaintiff's counsel) could have explored the question of reading, writing, and math more extensively with the vocational expert, the subject was nevertheless explicitly addressed during the testimony.  As such, if the hypothetical presented to the vocational expert corresponded with the ALJ's RFC determination, this Court would find that the ALJ had adequately addressed any arguable conflict between the GED levels for the representative occupations and the vocational expert's testimony.

Notably, however, the ALJ asked the vocational expert about a claimant who could not perform "much" reading, writing, or mathematics, but found in the RFC assessment that Plaintiff "cannot perform *any* tasks that involve reading, writing or math …." (T at 55)(emphasis added).  The vocational expert was not asked, and did not testify, as to whether a claimant unable to undertake any tasks involving reading, writing, or mathematics could perform the representative occupations.

"In questioning a vocational expert, a hypothetical must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and significant." *Riley v. Astrue*, No. 11-CV-6512T, 2012 U.S. Dist. LEXIS 159113, at *20 (W.D.N.Y. Nov. 6, 2012).  "If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled." *Abdulsalam v. Comm'r of Soc. Sec*., No. 5:12-cv-1631 (MAD), 2014 U.S. Dist. LEXIS 13442, at *30 (N.D.N.Y. Feb. 4, 2014).

Stated succinctly – "[t]he RFC findings contained in the decision must match the hypothetical posed to the expert."  *Owens v. Astrue*, No. 5:06-CV-0736 (NAM/GHL), 2009 U.S. Dist. LEXIS 102277, at *26-27 (N.D.N.Y. Nov. 3, 2009).

That was not the case here and a remand is therefore required.

B.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

Treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with

other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

Dr. Kingsley Nwokeji, Plaintiff's treating psychiatrist, provided three (3) opinions as to Plaintiff's level of impairment.  In November of 2016, Dr. Nwokeji completed a medical source statement, wherein he noted a diagnosis of major depressive disorder and assigned a Global Assessment Functioning ("GAF") score[3] of 40, which evidences "major impairment" in social or occupational functioning. *See Hendrickson v. Astrue*, 11–CV–927, 2012 WL 7784156, at *8 n. 12 (N.D.N.Y. Dec.11, 2012).

Dr. Nwokeji opined that Plaintiff would be absent from work more than 3 times per month due to her impairments or treatment and had

---

[3] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

marked loss of ability to perform any of the requirements of basic work activity, including the ability to interact with others, respond appropriately to changes in a work setting, deal with work stress, make simple work-related decisions, complete a normal workday or workweek, and understand, remember, and carry out simple work instructions. (T at 251-52).

Dr. Nwokeji completed additional medical source statements in June of 2017 (T at 262-65) and November of 2018 (T at 805-808), which contained the same assessment of pervasive, marked limitation.

The ALJ afforded "little weight" to Dr. Nwokeji's opinions, finding them inconsistent with the treatment record. (T at 57).  The ALJ characterized Plaintiff's mental status examinations over the course of several years as "entirely unremarkable" and noted that Plaintiff had "not been treated in the emergency room or been psychiatrically hospitalized at any time since her alleged onset date." (T at 57).

The Court recognizes that when the record contains conflicting medical evidence, it is the role of the Commissioner, and not this Court, to resolve such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

However, it is "well-settled that 'the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion . . . . While an [ALJ] is free to … choose between properly submitted medical opinions, [s]he is not free to set [her] own expertise against that of a physician who [submitted an opinion to or] testified …." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)(quoting *McBrayer v. Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983)).

In the present case, this Court concludes that the ALJ's assessment of Dr. Nwokeji's opinions cannot be sustained.

First, Dr. Nwokeji had a lengthy treating relationship with Plaintiff (monthly for 4 years).  The Second Circuit has recognized the particular value of treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of SSA*, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."). While the ALJ referenced the length of the treating relationship in passing (T at 57), she did not evidence an adequate recognition of the significance of Dr. Nwokeji's opportunity to observe and assess Plaintiff over an

16

extended period. *See Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Second, the ALJ's characterization of the clinical examinations as "entirely unremarkable" is conclusory and not supported by the record. Dr. John Laurence Miller, the consultative psychiatric examiner (whose opinion the ALJ found entitled to "significant" weight) (T at 58), described Plaintiff as dysphoric and anxious, with impaired concentration and memory. (T at 256-57). Treatment notes likewise document persistent dysphoric and depressed mood, anxiety, personal struggles, and homelessness. (T at 275, 280, 288, 291, 298, 314-15, 420, 458, 468. 759-61).

To be sure, there are numerous "normal" mental status examination findings and Plaintiff was generally described as cooperative and appropriate with physicians and clinicians in the course of her treatment. The Commissioner's regulations, however, recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are

less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn* v, 729 Fed. Appx. at 121 (decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Dr. Nwokeji, who had the most extensive opportunity to observe and assess Plaintiff's impairments, repeatedly found marked limitation in all domains. (T at 251-52, 262-65, 805-08). Dr. Miller, the consultative examiner, diagnosed major depressive disorder, recurrent episodes, moderate, with psychotic features, and opined that Plaintiff's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis." (T at 258).

Dr. Miller assessed less severe impairment than Dr. Nwokeji in terms of Plaintiff's ability to meet the mental demands of basic work activity, finding moderate limitation as to social interaction and emotional regulation;

mild impairment with respect to using reason and judgment to make work-related decisions; and no limitation in terms of understanding, remembering or apply simple directions, sustaining concentration, or sustaining an ordinary routine and regular attendance at work.  (T at 257).

Before assigning little weight to multiple assessments from a long-term treating psychiatrist due to "unremarkable" mental status examinations, the ALJ was required to address the fact that the treating psychiatrist and examining psychologist both concluded that Plaintiff's impairments significantly interfered with her ability to function on a daily basis, notwithstanding her capacity to be cooperative and appropriate during brief, structured, supportive encounters with mental health professionals.

The ALJ's decision to afford little weight to Dr. Nwokeji's assessments and reach an RFC determination very much at odds with those assessments cannot be sustained.

C.   Listings Analysis

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets

or equals a listed impairment, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). "The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings impairments. (T at 54).  The ALJ gave specific consideration to paragraph (B) of the impairment set forth at Listing 12.04 (Depressive, bipolar and related disorders).  To satisfy that Listing, a claimant must have, *inter alia*, extreme limitation in one, or marked limitation in two, of the following domains of mental functioning: understanding, remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; and adapting or managing oneself.

The ALJ found the requirements of this Listing not satisfied.  (T at 55).  In particular, the ALJ assessed no limitation regarding Plaintiff's ability to understand, remember, or apply information; moderate limitation in her ability to interact with others; mild limitation with respect to maintaining

concentration, persistence, or pace; and moderate limitation in adapting or managing herself. (T at 55).

The ALJ's Listings analysis is inconsistent with the opinions provided by Dr. Nwokeji, who assessed marked limitation in all domains of mental functioning. (T at 251-52, 262-65, 805-08).  Thus, the ALJ's errors in evaluating Dr. Nwokeji's opinions, outlined above, likewise undermine the Listings analysis, which must therefore be revisited on remand as well.

*D.  Remand*

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted.  *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).  Here, the record is complete and contains persuasive proof of disabling mental health impairments, including multiple assessments from a treating psychiatrist with the opportunity to

observe and assess Plaintiff over the course of an extended treating relationship. The ALJ erred in assessing the medical opinion evidence and failed to conduct a proper step five inquiry with the vocational expert. Because the Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none remand is warranted for calculation of benefits.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 24) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 30) is DENIED; and this case is REMANDED for calculation of benefits.  The Clerk is directed to enter final judgment consistent with this decision and then CLOSE this case, subject to the right to submit a timely application for attorney's fees and costs.

Dated: March 17, 2022                    *s/Gary R. Jones*

                                         GARY R. JONES
                                         United States Magistrate Judge